## Chicago City Railway Company v. Sarah A. Crauf.

### Gen. No. 13,366.

1. VERDICT—*when Appellate Court will not reverse, except for errors of law.* To reconcile the conflicts in the evidence is the obligation and duty primarily resting upon the jury, and while it is true that the Appellate Court in the discharge of the duty imposed upon it by law will set aside a jury's finding where an examination of the evidence discloses that such finding is manifestly against the clear weight of the proof, yet where it is clear that the evidence of the successful party is of itself amply sufficient to support the jury's finding, such verdict will not be disturbed except for errors, if any, committed in the trial of the cause, not affecting the question of the preponderance of the proof and the credibility of the several witnesses and the weight to be accorded to their evidence.

Chicago City Ry. Co. v. Crauf

2. VERDICT—*when not disturbed as excessive.* The assessment of damages is the function of the jury which will not be disturbed on review unless it is clear that improper influences inspired its assessment or that it is excessive or contrary to the greater weight of the evidence.

3. PASSENGER AND CARRIER—*duty of conductor when former is seeking to alight.* The law imposes upon a conductor the duty of knowing whether or not a passenger has alighted, and the further duty not to cause the car to be started until that operation has been accomplished.

4. PASSENGER AND CARRIER—*when instruction proper upon duty of carrier where passenger seeks to alight.* An instruction is proper which tells the jury that if they believe from the evidence that the plaintiff signalled to the conductor to stop the car, that the car was stopped and that the plaintiff while the car was at a standstill started to get off and while she was in that act, without notice to her, the car, at the signal of the conductor, was started with a jerk before she had time to alight, and that she did not have a reasonable opportunity to alight before the car was so started, and that by reason thereof she was thrown down and injured, etc., that the defendant was liable, if they further believed that at the time plaintiff was in the exercise of due care for her own safety.

5. PASSENGER AND CARRIER—*degree of care required of latter.* A carrier of passengers is held to the exercise of the highest degree of care for the safety of its passengers, consistent with the practical operation of the road and the exercise of its business as a carrier.

6. CROSS-EXAMINATION—*what not improper restriction of.* Cross-examination is not unduly restricted where the purpose of the questions excluded is to discredit a witness with respect to matters not covered by the direct and not made the basis of any claim upon the part of the party calling such witness.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed October 3, 1907.

WILLIAM J. HYNES, SAMUEL S. PAGE AND WATSON J. FERRY, for appellant; MASON B. STARRING, of counsel.

ARNOLD TRIPP, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The plaintiff, Sarah A. Crauf, sued the defendant, the Chicago City Railway Company, claiming damages for a personal injury which she alleges she suffered as the result of defendant's negligence. Plaintiff, a middle aged woman, fifty years old, she says, on the morning of April 18, 1903, arrived in Chicago from the west on the "Burlington" road. At the time of the accident and of the trial she lived at 3453 Sixty-fifth street, Chicago. For the purpose of reaching her home she chose the street car route, and with a transfer boarded defendant's Wentworth avenue car at Clark street, from which the accident to plaintiff occurred. Nothing unusual transpired until nearing Sixty-third street and Homan avenue, when plaintiff signaled the conductor of the car that she desired to leave the car at that point. She picked up her suit-case and umbrella and got down upon the rear step of the car while it was at a standstill, and, as she claims, just as she was in the act of stepping off the car onto the ground, without any warning or intimation to her, the car suddenly started with such a jerk that she was thrown from it to the ground with great force and violence, resulting in injury to her ankle, right side, limb and shoulder. The principal injury was to her ankle, which laid her up for six weeks, permanently impairing its usefulness.

Plaintiff and other witness Adams testify that the conductor stood on the inside of the door, rendering no assistance to plaintiff and taking no notice of her movements and without ascertaining whether or not she had safely alighted, rang the bell signal for starting the car, in response to which the car moved as related, and plaintiff was thrown and injured.

That the accident to plaintiff happened while she was in the act of alighting from defendant's car is not seriously disputed. The main contention rests in the contradiction of this fact furnished by the witness Ryan. He claims to have been on the back platform of the car at the time and an eye witness of the accident. He says plaintiff fell after she had cleared the car and after the conductor had said to her, "now take your time and be careful," and that the conductor did not ring the starting bell until she was off the car.

Adams swears the conductor remained inside the car and did not go out onto the platform while plaintiff was in the act of alighting from the car. The conductor's account somewhat tallies with that of Ryan.

A trial before the court and jury resulted in a verdict and judgment for $1,200, and the record is here on appeal for review.

Defendant assigns as error and urges in argument that the verdict is contrary to the weight of the evidence, the admission of improper and the rejection of proper evidence, and that instructions were erroneously given at the instance of plaintiff.

The evidence is conflicting. That of plaintiff, standing alone, is ample to support the verdict; uncontradicted no other result was possible. It is, on the other hand, just as apparent that the evidence of the defendant in the record would, without countervailing proof, necessitate a verdict in its favor. To reconcile the conflicts in the evidence is the obligation and duty primarily resting upon the jury, and while it is true that this court in the discharge of the duty imposed upon it by law will set aside a jury's finding where an examination of the evidence discloses that such finding is manifestly against the clear weight of the proof, yet where it is clear that the evidence of the successful party is of itself amply sufficient to support the jury's finding, such verdict will not be disturbed except for errors, if any, committed in the trial of the cause, not affecting the question of the preponderance of the proof and the credibility of the several witnesses and the weight to be accorded their evidence. We have carefully examined all the testimony found in the record, and upon consideration of it are unable to say that the verdict is manifestly against its weight, but on the contrary are convinced that the evidence clearly sustains it. If the jury believed, as they undoubtedly did, that the conductor was inside the car at the time plaintiff attempted to get off, the evidence of plaintiff and Adams is readily reconcilable with the contention that the fall of plaintiff was caused by the negligent act of the defendant in its conductor

causing the car to be suddenly started while plaintiff was in the act of alighting and before she had been afforded an opportunity, while in the exercise of due care, to reach the street. The jury could readily see that if the conductor remained on the inside of the car he would not be able to observe the movements of the plaintiff, and she not being as nimble as a younger woman and being somewhat hampered in carrying her umbrella and suit-case, moved with less celerity than the conductor may have anticipated. So that, for that reason, he may have unintentionally, and without any purpose of injuring plaintiff, prematurely given the signal to start the car in the honest belief that plaintiff was clear of the car and safely on the ground. But the law imposed upon the conductor the duty of knowing whether or not plaintiff had alighted and the further duty not to cause the car to be started until that operation had been accomplished. Failure so to do was culpable negligence for which defendant is liable to respond in compensatory damages to plaintiff for the injuries suffered by her as a result of such negligence. Chicago West Div. Ry. v. Mills, 105 Ill., 63; North Chicago St. Ry. v. Cook, 145 Ill., 551.

The veracity of the witnesses Adams and Ryan seems to have been solved by the jury in favor of Adams. The fact that the conductor stopped the car by giving the emergency three bell signal on discovering that plaintiff had fallen to the roadway, would indicate that he did not see plaintiff alight, and therefore must have been somewhat in the dark as to the cause of her falling. This circumstance tends to corroborate plaintiff's testimony that she fell from the premature sudden starting of the car without notice to her.

Witnesses were produced in an effort to discredit the testimony of plaintiff as to the injuries from which she claims to have suffered as a result of the accident. Medical men were examined, whose testimony tended to throw doubt upon the nature and extent of plaintiff's claimed injuries, and neighbors also testified that the manner and appearance of plaintiff was about the same after as before the accident. The jury saw all these witnesses and were better able to

judge from their manner and appearance upon the witness
stand as to the motives (if any) which moved them to tes-
tify and the consequent weight to be accorded their evidence,
than we, who are shorn of the visual advantage which they
possessed.

The record does not disclose any material misrulings of
the trial judge in either admission or rejection of evidence.

The contention as to restriction of the latitude of cross-
examination of plaintiff which should have been indulged
under the rules of evidence, is calculated to mislead.    The
case was tried on the theory that the defendant was negli-
gent in starting the car while plaintiff was in the act of
alighting therefrom.    Wilful conduct on the part of the con-
ductor was neither claimed nor proven.    The questions put
to the plaintiff on cross-examination as to whether she be-
lieved the conductor did anything wilfully to cause her an
injury were withdrawn by counsel for appellant on the state-
ment of her counsel that they made no such claim.    The
point was waived on both sides, but had they not done so, an
objection to such a course of cross-examination in the condi-
tion of the proof would have been properly sustained.

The trial judge gave 26 instructions to the jury upon the
law of the case.    They were fully, fairly and, as to defend-
ant, liberally instructed upon all the theories of the de-
fenses made.

All the instructions asked by defendant, being 23 in num-
ber, were given as asked, and but three given at the request
of plaintiff.    In these three instructions, appellant con-
tends, there is error of law.    The law in these three in-
structions, on all points covered by them, was, in our opin-
ion, correctly stated.

The first instruction told the jury that if they believed
from the evidence that plaintiff signaled to the conductor to
stop the car and that the car was stopped, and that plaintiff,
while the car was at a standstill, started to get off and while
she was in that act, without notice to her the car at the signal
of the conductor started with a jerk before she had time to
alight, and that she did not have a reasonable opportunity

to alight before the car was so started, and that by reason thereof she was thrown down and injured, etc., that defendant was liable, if they further believe that at the time plaintiff was in the exercise of due care for her own safety. The liability here stated is identical with the announcement in Chicago City Ry. v. Mumford, 97 Ill., 560, where the court say: "It was the business of the driver to know before he started up the car whether passengers were in a position to be injured, and it cannot be regarded otherwise than as an act of negligence to start a car with a sudden jerk without the exercise of any precaution for safety of those who might be getting on or off the car." C. W. D. Ry. v. Mills, supra; North Chic. St. Ry. v. Cook, supra.

The second instruction directed the jury in the event they found the defendant guilty, to assess compensatory damages only for the injury suffered by plaintiff proximately attributable to the accident. The averment of wilfulness and wantonness contained in the declaration was abandoned upon the trial. In this state of the proof the element of wantonness and wilfulness had no place in the instruction, and the instruction as given was proper.

The third instruction told the jury that a carrier of passengers is held to exercise the highest degree of care for the safety of its passengers consistent with the practical operation of the road and the exercise of its business as a carrier. There is abundant authority holding that the degree of responsibility of a carrier of passengers is that stated in this instruction. Parmalee v. Wheelock, 224 Ill., 194.

The assessment of damages is the function of the jury, which we will not disturb unless it is clear that improper influences inspired its assessment or that it is excessive or contrary to the greater weight of the evidence. We are unable to reach the conclusion that any of these elements entered into the jury's assessment of damages.

There being no error in this record calling for our interference with the judgment of the Circuit Court, it is therefore affirmed.

*Affirmed.*