70    APPELLATE COURTS OF ILLINOIS.

Drane v. Sterling, Dixon & East. Electric Ry. Co., 154 Ill. App. 70.

## Eva Drane, Appellee, v. Sterling, Dixon & Eastern Electric Railway Company, Appellant.

### Gen. No. 5297.

CONTRIBUTORY NEGLIGENCE—*alighting from moving traction car.*
While it is not negligence as a matter of law to alight from a moving traction car at a street crossing, *held*, under the evidence in this case, that it was contributory negligence, as a matter of law, for the plaintiff to alight from the car in question in this case in the manner in which she did.

Action in case for personal injuries. Appeal from the Circuit Court of Whiteside county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1909. Reversed. Opinion filed March 11, 1910.

HENRY S. DIXON, C. C. JOHNSON and GEORGE C. DIXON, for appellant.

C. L. and C. E. SHELDON, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Mrs. Eva Drane was hurt in alighting from a street car in the city of Sterling on the evening of May 29, 1907. She brought this suit against the railway company to recover damages for said injuries. In her declaration she alleged that the car stopped at the intersection of Fourth street and Eighteenth avenue and that she then alighted from the car. Each count alleged that she was in the exercise of due care for her own safety and that the motorman had notice of her desire to alight. Two counts alleged that the car stopped and that as she was alighting the car was started suddenly and with a violent jerk. Two other counts alleged that the car was moving very slowly and as she was alighting the car was started and moved with a sudden and violent jerk. One of each set of these counts charged that the company was neg-

ligent in not having a conductor upon the car. Plaintiff had a verdict and a judgment and defendant appeals.

Plaintiff and two colored women living in the western part of the city went upon a street car to a cemetery in the eastern part of the city the day before Decoration Day in 1907 to decorate their graves and fix up their lots in the cemetery. When ready to return they got upon a westbound street car at Nineteenth avenue. The street car was operated by electricity applied by the motorman, whose station was in the vestibule in the front end of the car. There was no conductor. As plaintiff and her two friends were preparing to get upon the car at Nineteenth avenue the motorman called out to them in some words intended to hurry them to get upon the car. They got on and the car went west. They walked to the front end of the car and took seats on the south side. The motorman looked in and saw them sitting there. They each testify that he said something to them after they had taken their seats in the car which they did not understand. Plaintiff testified that she then decided to leave the car to avoid trouble. The motorman denied that he said anything to them in the car, and other passengers testified that they were talking and laughing with each other. They arose in the front part of the car and walked to the rear of the car. They each testified that the car stopped at the west side of Eighteenth avenue; that one colored woman got off; that as plaintiff was in the act of stepping to the ground the car started with a jerk and she was thrown, breaking a large bone in her left wrist and otherwise injuring her; and that the other colored woman waited a little longer and then stepped off and was thrown down. They each testified that the motorman saw them rise and start to the rear of the car, and this he denies. Several things about this narrative are peculiar. The motorman was driving his car west at the usual speed and approaching Eighteenth avenue.

72    APPELLATE COURTS OF ILLINOIS.

Drane v. Sterling, Dixon & East. Electric Ry. Co., 154 Ill. App. 70.

These women testify that all the time his face was
turned to the east and that he was looking down the
car, instead of looking ahead where the car was going.
This is very improbable. They testify that all the time
that they were walking east along the center of the
car to the rear, they saw him standing there on the
front or west vestibule with his face turned east look-
ing at them. The absurdity of this is manifest. They
alighted on the north side of this westbound car.
Plaintiff took hold of the rear handle with her right
hand and took hold of her dress skirt with her left
hand, and she testifies that she was stepping off with
her left foot first. It may be that it would not be neg-
ligence to step off from a standing car in that man-
ner, but there is a clear preponderance of the evidence
that this car did not stop at all at Eighteenth avenue
and that when plaintiff alighted it was going at the
rate of four or five miles per hour, or at least as fast
as a man could walk. While it is not negligence *per se*
to step off of a street car at a street intersection when
the car is in motion, yet it is obvious that a person
getting off from a moving car on the north side when
it is moving west would be required by ordinary pru-
dence to take hold of the forward handle with the hand
furthest forward, that is, the left hand, and to step off
with the right foot first. If plaintiff got off this car
while it was in motion, west bound, from the north side
thereof, as the evidence requires us to believe, then
her act in taking hold of the rear handle with her right
hand and not taking hold of any handle with her left
hand and stepping off with her left foot first would
inevitably cause her to be twisted and thrown down,
and such a method of alighting from a moving car was
manifestly negligent. The distance from the place
where the women got on at Nineteenth avenue to the
west side of Eighteenth avenue was less than 370 feet,
and at the rate the car was traveling they were on the
car about thirty seconds or perhaps forty-five seconds,
including the time taken in starting. In that time they

had to walk the length of the car, take their seats, get up again and walk back and get off. They did not pay their fares. There was a strap in reach of plaintiff as she knew by which she could pull the bell and notify the motorman that she wished to alight. She did not give this or any other signal to the motorman. They lived many blocks west of that part of the city. The motorman would have no reason to suppose that they would seek to alight within thirty or forty-five seconds after getting on. No reason is assigned by plaintiff why she left the car when she did or even why she wished to leave it. It is not to be believed that she left simply because the motorman said something which she did not understand. Moreover the fact that the motorman did not call for their fares tends to prove that he did not know that they were seeking to leave the car. There were a number of passengers in the car and several people at the street corner on the west side of Fourth street and south side of Eighteenth avenue. One Johnson, standing at that corner, wished to go on this car and as it did not stop he started on the run diagonally in a northwesterly direction on Fourth street and caught the car and got on the rear about twenty-five feet west of Eighteenth avenue. A passenger on the rear platform testified that the women got off just as Johnson got on. The motorman knew Johnson and saw him coming and reduced the speed of the car and looked back to the southeast and watched him till he saw that Johnson got on and then turned on the power again and went on till the car was about 150 feet west of Eighteenth avenue, when a passenger told him what had happened and he stopped.

We are of opinion that a clear preponderance of the evidence is that the car did not stop; that the motorman did not know that plaintiff was seeking to leave the car; and that plaintiff alighted from the moving car in a manner which was negligent in view of its

speed at that time. Plaintiff was hurt, but it does not follow that the street railway company is responsible and ought to pay her damages. We are of opinion that the evidence ought not to be submitted to another jury.

The judgment is therefore reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment:

We find that appellee was injured because of her own negligence, and that appellant was not guilty of negligence.