## LIABILITY FOR AN ACCIDENT ON A SCENIC RAILWAY.

Common Pleas Court of Hamilton County.

AGNES SENTKER v. ISAAC M. MARTIN ET AL.

Decided, January Term, 1917.

*Negligence—Presumption of, Arises in the Operation of a Scenic Railway, When—Highest Degree of Care Required in the Operation of —Passenger Injured by Car Leaving the Track.*

1. A person controlling and operating an amusement device known as a scenic railway, is a carrier of passengers and is bound to exercise the highest degree of care for the safety of such passengers and to do all that human foresight and vigilance can do consistent with the mode of conveyance and the practical operation of its business to prevent accidents to them.

2. If an injury to a passenger on such scenic railway is caused by apparatus wholly under the control of the owner and furnished and managed by him, and the accident is of such a character that it would not ordinarily occur if due care was used, a presumption of negligence arises from the nature of the accident and the attending circumstances though not from the mere fact of the accident itself.

*Pogue, Hoffheimer & Pogue* and *Walter Helmholz,* for the motion.
*Michael Minges* and *Albert Graef,* contra.

GEOGHEGAN, J.

Heard on motion for a new trial.

The plaintiff was injured while riding upon a scenic railway in the amusement park operated by the defendants. The car in which she was riding was of the type operated by gravity, and at a certain point in the line of the railway it left the track. causing her to be thrown out and injured.

After the accident an examination was made of the railway, the track, the car, the wheels and axles upon the car, and every-

thing connected with the device, and nothing unusual or out of the ordinary was found. Other cars were operated over the same device immediately after the accident and they pursued their course along the tracks from the beginning to the end without accident or mishap.

The jury returned a verdict in favor of the plaintiff for $500, and it is now sought to have the court set this verdict aside and grant a new trial, the principal contention being that the defendants, by their evidence, met the *prima facie* case established by the plaintiff, and that therefore the verdict of the jury is contrary to the weight of the evidence.

That the plaintiff in riding upon this device was a passenger and as such the defendants, in operating the car, owed her the duty to exercise the highest degree of care and to do all that human foresight and vigilance can do consistent with the mode of conveyance and the practical operation of its business to prevent an accident to her, is conceded. This rule is clearly laid down in the case of *O'Callaghan* v. *Dellwood Park Co.*, 242 Ill., 336, a case practically on all fours with the case at bar, wherein the Supreme Court upheld a verdict for the plaintiff where the plaintiff's case was rested entirely upon the presumption of negligence arising out of the nature of the accident and the attending circumstances.

And in the case of *Cincinnati Street Railway Co.* v. *Kelsey*, 9 C. C., 170, the Circuit Court of this county held that where no negligence of the passenger appears and there is no explanation for the escape of the car from the track, and nothing is shown that it was unavoidable, notwithstanding a high degree of care and skill on the part of the railway company, then the jury is authorized to presume that there was some negligence on the part of the company.

This doctrine is also laid down in the case of *Cincinnati Traction Co.* v. *Holzenkamp*, 74 Ohio St., 379.

It would seem, therefore, that a jury had a right to balance the presumption of negligence arising from the nature of the accident and the circumstances attendant thereon as against

the evidence offered by the defendants that there was no defect in the device or negligence in its manner of operation that could have caused the accident. If the jury, in thus balancing the testimony, disbelieved the statements of the witnesses for the defendants as to their examination immediately succeeding the accident, or felt that the accident was of the kind that in the ordinary course of events would not have occurred without some negligence on the part of the defendants, they were right in finding for the plaintiff, and as the case was purely one for the jury, the court should hesitate to interfere with its verdict if the rules of law appertaining to circumstances such as surrounded this accident were squarely presented to the jury. The doctrine of *res ipsa loquitur* is based entirely upon the proposition that the facts are peculiarly within the knowledge of the alleged wrongdoer, and even though the defendants may show by negative evidence that nothing could be found by examination and inspection which caused the accident, it would seem that the jury, in the proper application of that doctrine to the facts of the case, have the right to regard this negative evidence as not controlling or of little weight and base their verdict entirely upon the presumption arising out of the unusual nature of the accident, happening upon a device entirely under the control of the defendants.

In view of this reasoning, the contention of the defendants can not be sustained.

The defendants also offered, in bar of this action, a release claimed to have been executed by the plaintiff shortly after the accident. The plaintiff met this by saying that she did not sign any release, or that if she did sign a paper purporting to be a release, her signature was obtained while she was unconscious or in such a state of semi-consciousness that she was incapable of appreciating the nature of the act she was called upon to perform. The evidence shows that while she was lying on a cot before she had been removed from the park, this signature was obtained. That she was suffering from pain and in an unconscious condition was supported by evidence offered in her

behalf.  This, of course, was contradicted, and therefore it was the duty of the court to submit to the jury the question whether at the time the alleged release was signed, if it was signed by her, she was in a condition to appreciate the nature of her act. The jury found for her, which is, in effect, a finding that she either did not sign the alleged release, or, if she did sign it, she did not know what she was doing.

The court is unable to say, in view of the conflicting evidence upon this point, that the verdict of the jury is contrary to law or manifestly against the weight of the evidence.

The motion will therefore be overruled.